Dunn v. Ghost.

# DUNN v. GHOST.

1.   The statute (section 7, page 111 R. S.) fixes the liability of an assignor by endorsement of negotiable instruments after diligence against the maker by suit, unless such suit would have been unavailing.

2.   A plea and offer of proof to make a general indorsement a restrictive one, or to show that the contract was different from that expressed, cannot be done without a violation of established principles.

3.   Under the statute an assignee of a note takes it subject to any defense existing between the maker and the payee, which appears on the face of the note, or of which he had notice at the time of the assignment, and in such case it is immaterial whether the note was assigned before or after it became due.

4.   In an action by an indorsee against an indorser, an answer which alleges that the consideration received by the indorser, was less than the face value of the note, is bad on demurrer.

5.   If an indorser does not choose to fix his own liability, the law will fix it for him.

*Error to District Court of Arapahoe County.*

THE facts are stated in the opinion.

Mr. J. W. HORNER & Mr. R. D. THOMPSON, for plaintiff in error.

Messrs. GEORGE & FAUNTLEROY, for defendant in error.

STONE, J. One J. V. Morrice made his promissory note to John C. Dunn, the plaintiff in error, for the sum of $118.50. Dunn assigned the note to A. C. Fisk, who transferred it to A. M. Ghost, the defendant in error, who brought suit thereon against Dunn as indorser, alleging insolvency of the maker under the statute. A demurrer was sustained to the answer, and an amended answer filed, to which also a demurrer was sustained. Defendant below elected to stand by the amended answer, and judgment was rendered against him for the amount of the note. Error is assigned upon sustaining the demurrer to the amended answer and the judgment thereupon.

The answer in question avers that the defendant below sold and assigned the said note to Fisk after maturity, "for the purpose of transferring" the same, "and for no other purpose;" and that the note was so assigned "for and in consideration of the sum of ten dollars, and for no other consideration whatever," and that plaintiff obtained the note after said assignment.

The ground of the demurrer is that "such answer does not contain facts constituting a defense to the plaintiff's action."

Sec. 7, Chap. IX of our statutes (R. S. p. 111), fixes the liability of an assignor by indorsement of negotiable instruments after diligence against the maker by suit, unless such suit would have been unavailing.

A similar statute in Illinois, from which ours is copied, has received judicial construction from the Supreme Court of that State, to the effect that unless by special endorsement he restricts his liability, the assignor, by a general endorsement of the note, binds himself to pay it upon the happening of either of the contingencies specified in the statutes. *Schuttler* v *Pratt*, 12 Ill. 419; *Bledsoe* v. *Graves*, 4 Scam. 385.

If it is intended by the answer to convey the meaning that there was at the time of the assignment of the note by appellant an understanding or agreement, aside from the naked endorsement that Dunn, as assignor, was not to be held bound for the payment of the note, the plea was certainly bad, since this court in the case of *Martin* v. *Cole*, 3 Col. 113, held that a plea and offer of proof to make a general endorsement a restrictive one, or to show that the contract was different from that expressed, cannot be done without a violation of established principles. But if instead of pleading a parol contemporaneous agreement, as in the case of *Martin* v. *Cole*, *supra*, the defense goes no further than the mere language of the averment, to-wit: that Dunn assigned the note for the purpose of transferring it only, which is equivalent to an averment that he assigned the note not intending that he should be liable as an assignor; such a plea is a simple denial of the legal import of the assignment, and is bad on demurrer. *Trask* v. *Roberts*, 1 B. Munroe, 201; *Weaver* v. *Fries*, 85 Ill. 356; *Lee* v. *Pile*, 37 Ind. 107.

A point is also made upon the averment in the answer that the assignment was made after maturity of the note. We cannot see that this avails as a defense. The only distinction made by our statute between notes assigned before and after maturity as affecting parties thereto, is set out in sections eight and nine of chapter nine of the General Laws, which provide that where the instrument is assigned after maturity, the maker, in a suit against him by an endorser, may set up the same defense that would have been good in a suit against him by the payee; while if the assignment was made before maturity the maker, in a suit against him by an endorser, may plead any payment made on the obligation prior to the assignment to the plaintiff, provided the latter had notice of such payment before the endorsement to him.

The rule at common law is that a note transferred after maturity is affected by all the equities between the original parties, whether the holder had notice thereof or not; but only

Dunn v. Ghost.

such equities as attach to the note itself, and as between those parties. Story on Prom. Notes, Sec. 178.

Our statute has changed the common law rule so far as to subject the note so assigned to all the equities between the maker and payee, where suit is brought against the maker.

This construction is put upon a similar statute in Nebraska. *Davis* v. *Neligh*, 7 Neb. 78. *Ibid.* 84.

The statute changes the law merchant so as to dispense with demand and notice, and renders the assignor liable only in case diligence, where availing, is had against the maker; but, upon this contingency arising, such liability, under the statute, seems to attach irrespective of whether the instrument was assigned before or after maturity.

In other words, an assignee of a note takes it subject to any defense existing between the maker and the payee, which appears on the face of the note, or of which he had notice at the time of the assignment; and in such case it is immaterial whether the note was assigned before or after it became due. *Frink et al.* v. *Ryan*, 3 Scam. 324. The liability imposed on the assignor by the terms of our statute is a general liability, conditioned only upon diligence against the maker, or excuse therefor, unless the assignment be restricted by its own terms. *Leavett* v. *Putnam*, 3 Comstock, 494; Redfield & Bigelow Lead. Cas. Bills and Prom. Notes, 156. The Supreme Court of Illinois, in construing a like statute, say:

" The manifest intention of our act is to give the last assignee the full benefit of all the assignments. The policy of such an enactment is obvious. Such being the condition of the last assignee, paper of this description gains more credit in the community. Such paper is not taken on the faith of the maker, but upon the faith of the endorsements. They are looked to as the means by which the note is to be paid. The condition of the last assignee, if he had no remedy against his remote assignor, would not be improved at all by a multitude of assignments. The first assignor, by placing his name on the note, gives it the weight of that name in the community;

he gives the note character; he declares by his endorsement to all to whom the note may come in a fair course of business, that the maker is able to pay it, and if he is not able and does not pay after due diligence to coerce it, that then in that event, he will pay it. This is the contract which he makes with every person who may become the owner of the note by assignment, not only with his immediate assignee, but with all subsequent assignees, and is made liable on such contract by the express terms of the statute. Every assignor shall be liable to the assignee. Such liability is several, and attaches in favor of each assignee.

" An express liability being thus created by the act, it is unnecessary there should be a privity of contract between the remote assignor and the last assignee. * * * The promise or contract growing out of the endorsement is by our act, made assignable, and therefore the assignee of such a promise or contract can maintain an action upon it. The endorsement is on the paper itself; it accompanies it everywhere, and by successive assignments in the . same way, each one becomes a contract of the same character to pay the last assignee in case the maker is unable to pay. He is to have the benefit of each and every assignment. If this were not the case, the situation of the last assignee would be hopeless with an insolvent maker, and intermediate assignors in the same condition, although there be a good assignor on the note. This consideration of itself would determine the question of the liability of the remote assignor." *Clifford* v. *Keating*, 3 Scam. 250.

In a recent case the Supreme Court of Kansas, in passing upon the precise question raised in the case of *Martin* v. *Cole*, *supra*, and in which they hold the same doctrine, say: " That from such an endorsement the law implies a well defined contract, and that such contract casts a conditional liability on the endorser, is conceded. And that such implied contract is conclusive as between remote parties to the note without notice or any different express contract, is clear." *Doolittle* v. *Ferry*, 20 Kansas, 230, 27 Am. Repts. 167; See, also, *Charles* v. *Davis*,

42 Wis. 56; *Harrison* v. *McKim*, 18 Iowa, 480, and 1 Daniels
on Neg. Inst. Sec. 719.

As regards that part of the answer which alleges that the
consideration received by the endorser, Dunn, was less than
the face value of the note, and whereby it is contended by his
counsel that the appellant, if liable at all, is liable for only the
sum actually received by him, as the proper measure of re-
covery, we think the plea stands upon no better foundation
than the claim of entire exemption from liability.

To require each successive assignee or holder of a negotiable
instrument to ascertain and keep track of the true amount
paid and received by each antecedent endorser, and to allow
each endorser sued to show that he received from his immedi-
ate assignee less than the amount due on the instrument from
the maker, would impose such a complication of rights and
liabilities upon parties, and such burdensome restrictions upon
the use of negotiable paper, as to greatly impair, if not utterly
destroy, its present usefulness in business transactions. The
law fixes the liability of the assignor. The ground of the rule
is, that if an endorser does not choose to fix his own liability,
the law will fix it for him. Otherwise no one can know how
or to what extent an endorser in blank is bound. In the case
before us, if the endorsement was in blank, the assignee had a
right to fill it up by writing over the name of the endorser
thus : " Pay to A. M. Ghost." In that case, what amount to
be paid would the order of the assignor import ? Certainly
not $10 ; not any sum less than the amount due on the note.
The legal import would be simply that the note was to be paid
according to its tenor.

It would be useless to attempt to review or reconcile the
great contrariety of decisions touching the liability of parties
to negotiable instruments. Much of this conflict of opinion
arises out of the difference between the law merchant and spe-
cial statutes which, like ours, govern the subject within a
particular State. In some of the States the rule as to the
measure of recovery, in the suit between assignor and assignee,

seems to be fixed at the amount which the assignee plaintiff has paid for the note.

Mr. Parsons, in his elaborate work on Contracts, after a thorough presentation of the cases touching the sale of notes and bills for less than their face value, expresses his conviction in favor of the rule allowing a recovery of the full amount due upon the obligation—that being the contract upon which the assignor undertakes conditionally to see fulfilled. 3 Parsons on Contracts, pp. 146, 148.

Mr. Daniel, in his standard treatise on Negotiable Instruments, takes the same view of this question. 1 Daniel on Neg. Inst. Secs. 757 to 758.

Entertaining this view, we must hold that as to that part of the answer which avers that Dunn received but ten dollars as the price of the note from Fisk, the intermediate assignee, it is not a good defense. It would not be good in a suit against Dunn by Fisk, and it certainly cannot be good in the suit against him by Ghost, the remote assignee.

The demurrer was rightfully sustained, and the judgment will be affirmed.

*Judgment affirmed.*