## No. 9387.

### INTERSTATE TRUST COMPANY ET AL. *v.* THE UNITED STATES NATIONAL BANK.

1. BANK CHECK—*Presentation of*, involves a guarantee of its genuiness. The drawee bank need concern itself only with the genuineness of the signature and the state of the drawee's account.

2. ALTERED CHECK—*Payment—Effect*. Payment by the drawee is a conclusive admission of the drawer's signature. But the rule has no application where there is an alteration of the body of the paper.

3. RESTRICTIVE ENDORSEMENT—*Defined*, is one which prohibits further negotiations of the paper, constitutes the endorsee merely the agent of the owner, or vests the title in him in trust for some other person. An endorsement directing payment "to any bank—previous endorsements guaranteed" is not of this character.

4. *Contradiction or Variation of Endorsement*. The statute defining and controlling the effect of an unrestricted endorsement, such endorsement cannot be varied by parol evidence, nor by any evidence of any custom in business.

*Error to Denver District Court, Hon. John H. Denison, Judge.*

Messrs. SYMES & STEPHENS, Mr. IVOR O. WINGREN, Mr. FRED FARRAR, Messrs. HUGHES & DORSEY, Mr. E. I. THAYER, for plaintiffs in error.

Messrs. ROGERS, ELLIS & JOHNSON, Mr. ALBERT A. REED, Mr. PERCY ROBINSON, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

THE action was by defendant in error to recover from either or both of the plaintiffs in error the amounts paid on

eight checks, aggregating $2,735.16, which had been paid to plaintiff in error, The First National Bank, for The Interstate Trust Company, through the Clearing House. It was later discovered that one of the checks had been presented from another source, and the amount thereof was eliminated from the suit, leaving the demand $2,680.16, without interest.

The checks in question were deposited by one George Kelson, an employee of The Post Coal & Iron Company, who, it appears, had erased the name of the original payees and inserted his own therein, and then deposited them to his credit with The Interstate Trust Company. The checks were endorsed by the trust company as follows: "Pay to the order of any bank or banker—previous endorsements guaranteed," and deposited to its credit with The First National Bank. The latter bank endorsed the same: "Received payment through the Denver Clearing House," and presented them to defendant in error, the drawee, who paid the checks through the clearing house. It appears that the transactions in question occurred between the 18th day of November and the 1st day of December, 1916, and that the fraud was discovered on December 19th next thereafter, when another check was deposited by Kelson with The Interstate Trust Company, upon which payment was stopped upon notice to the drawee bank by the trust company. Later this suit was brought by The United States National Bank. Findings and judgment were in its favor and that judgment is now here for review.

It is a settled rule that a person who presents for payment checks such as are here involved guarantees the genuineness of the check, and the drawee bank need concern itself with nothing but the genuineness of the signature, and the state of the account with it of the drawee. In *Leather Manf. Bank v. Merchants Bank*, 128 U. S. 35, 33 L. Ed. 342, 9 Sup. Ct. 4, upon this point the court said:

"One who, by presenting forged paper to a bank, procures the payment of the amount thereof to him, even if

he makes no express warranty, in law represents that the paper is genuine, and, if the payment is made in the ignorance of the forgery, is liable to an action by the bank to recover back the money which, in equity and good conscience, has never ceased to be its property."

In *Espy v. Bank of Cincinnati*, 85 U. S. 604, 21 L. Ed. 947, cited with approval in the foregoing case, it is said in the syllabus:

"That where a party to whom such a check is offered sends it to the bank on which it is drawn for information, the law presumes that the bank has knowledge of the drawer's signature and of the state of his account, and it is responsible for what may be replied on these points."

"That unless there is something in the terms in which information is asked that points the attention of the bank officer beyond these two matters, his response that the check is good will be limited to them, and will not extend to the genuineness of the filling-in of the check as to payee or amount."

In *Bank of Commerce v. Union Bank*, 3 Comst. (N. Y.) 230, it is declared in the syllabus:

"The payment of a bill by the drawee is ordinarily an admission of the drawer's signature, which he is not afterwards, in a controversy between himself and the holder, at liberty to dispute." But the reason of the rule fails, and the rule itself does not apply where the forgery is not in counterfeiting the name of the drawer, but in altering the body of the bill."

In *Rhodes v. Jenkins*, 18 Colo. 49, 31 Pac. 491, 36 Am. St. 263, the foregoing decision was cited with approval.

It is urged by plaintiffs in error that the endorsements: "Pay to the order of any bank or banker—previous endorsements guaranteed," made by The Interstate Trust Company, and "Received payment through the Denver Clearing House," by The First National Bank, were collection, or restrictive endorsements, and that the endorsers guaranteed nothing as to the genuineness or worth of the paper. A

restrictive endorsement is such only when it prohibits further negotiation of the paper, constitutes the endorser merely the agent of the owner, or vests the title in the endorsee in trust for, or to the use of, some other person. Section 4499, R. S. 1908. The authorities are practically unanimous that endorsements such as the ones under consideration can have no such limited or restricted effect. Crawford on Negotiable Instruments (1916 Ed.), 78, 79, 130, 132; *Nat. Bank of Commerce v. Bossemeyer,* 101 Neb. 96, 162 N. W. 503, L. R. A. 1917-E 374; *First Nat. Bank of Belmont v. First Nat. Bank of Barnesville,* 58 Ohio St. 207, 50 N. E. 723, 41 L. R. A. 584, 65 Am. St. 748; *First Nat. Bank of Crawfordsville v. First Nat. Bank of Lafayette,* 4 Ind. Appeals 355, 50 N. E. 723, 41 L. R. A. 584, 65 Am. St. 748; *Woods v. Colony Bank,* 114 Ga. 683, 40 S. E. 720, 56 L. R. A. 920; *New York Produce Exchange Bank v. Twelfth Ward Bank,* 135 App. Div. 52, 119 N. Y. Sup. 988.

In *National Bank v. Bossemeyer, supra,* the court in discussing the effect of the endorsement: "Pay to any bank or banker; all previous endorsements guaranteed," said:

"Is the endorsement restrictive? Whatever may have been held before the enactment of the Negotiable Instruments Act, it is clear that this question must be determined by the provisions of that statute, * * * as follows: 'An endorsement is restrictive which either, first, prohibits the further negotiation of the instrument; or second, constitutes the endorsee the agent of the endorser; or third, vests the title in the endorsee in trust for or to the use of some other person. But the mere absence of words implying power to negotiate does not make an endorsement restrictive."

"There is nothing on the face of this endorsement which prohibits the further negotiation of the instrument, or constitutes the endorsee the agent of the endorser, or vests title in the endorsee in trust for the use of some other person, and hence, by the most elementary principles of statutory construction, the plain meaning of the language must be

observed, and it must be held that the endorsement was not restrictive."

It is also urged by plaintiffs in error that by reason of certain rules and regulations of the Denver Clearing House, with which all banks are familiar, the endorsements in question are taken to be collection endorsements only, and therefore regardless of what the law may be, defendants in error are in effect estopped to deny that the endorsements are collection endorsements only. It is well settled, however, that unrestricted endorsements can not be varied either by parol evidence, or evidence of custom in business, for the reason that the statute definitely defines their meaning and controls their effect. *Martin v. Cole,* 3 Colo. 113; *Dunn v. Ghost,* 5 Colo. 134; *Torbert v. Montague,* 38 Colo. 327, 87 Pac. 1145; *Corn Exchange Bank v. Nassau Bank,* 91 N. Y. 74, 43 Am. Rep. 655; *Moody v. First Nat. Bank,* 19 Texas Civ. App. 278, 46 S. W. 660; *State Bank v. Cumberland Savings & Trust Co.,* 168 N. C. 605, 85 S. E. 5, L. R. A. 1915-D 1138; *Nat. Bank v. Bossemeyer, supra; N. Y. Produce Exchange Bank v. Twelfth Ward Bank, supra.*

By the weight of authority, under such circumstances as are disclosed in this case, The United States National Bank was bound only to knowledge of the genuineness of the signatures on the checks in question, and the state of the drawer's account with it. It is true also, both on principle and authority, that by the endorsements on the checks the plaintiffs in error guaranteed the genuiness of the paper, that all prior holders had good title, and the capacity to contract. Indeed, this is affirmatively made the effect of such endorsements by the Negotiable Instruments Act itself, 4529 R. S. 1908.

The judgment is correct and should be affirmed.

Judgment affirmed.

Mr. Chief Justice Garrigues and Mr. Justice Allen concur.