Samuel C. Coleman, J.
A corporation mailed a dividend check for $4.72 to one of its shareholders in the Philippines. Several months later the defendant, Wheel Parts, received the check from a firm in the Philippines with which it had had dealings. The amount had been raised to $4,720. There is no suggestion that this had been done by Wheel Part’s correspondent. That correspondent had not indorsed the check; it had been indorsed only by the payee. Wheel Parts presented the check to the defendant, First National Bank, which suggested that the check be delivered to it “ for collection, ’ ’ instead of being-deposited in the ordinary way. Wheel Parts thereupon indorsed the check in blank and delivered it to First National. That bank stamped upon it, “ received for collection,” indorsed it in the usual way, “ prior endorsements guaranteed,” and transmitted it through the usual banking channels to the drawee bank. The latter paid the larger amount, transmitting the amount to the defendant bank which in turn credited Wheel Parts with the proceeds. Wheel Parts immediately withdrew the proceeds. The drawee bank charged its depositor with the larger amount and later when the forgery was discovered made its depositor whole. Plaintiff (assignee of the drawee bank) sues Wheel Parts and the collecting First National.
Wheel Parts clearly is liable. It indorsed the check and received full payment upon the instrument. By its unqualified indorsement it warranted not only the signature of the payee but the integrity of the document itself (Negotiable Instruments Law, § 116). It relies upon “ negligence ” in the manner in which the check was drawn, but assuming such a defense to be available against the bank as distinguished from the maker, I see no negligence. The form of the check and the manner in which the figure “$4.72” was inserted followed customary practice.
The case is different as to the collecting bank. If that bank had not received the check “for collection ” — that is, as an agent for the purpose of receiving payment for its depositor, it would be liable. It concedes as much. It would then have been *818 in the position of Wheel Parts itself with respect to its own warranties (Negotiable Instruments Law, § 116). But as it was acting only as agent to effect collection for Wheel Parts and made its status manifest by the form of its indorsement, it is liable to the drawee bank only if the proceeds which it received are still in its possession and have not been paid over to its own principal, Wheel Parts (Negotiable Instruments Law, §§ 350-a, 350-c; National Park Bank v. Seaboard Bank, 114 N. Y. 28; National Park Bank v. Eldred Bank, 90 Hun 285). The proceeds here, as I have said, were paid over to Wheel Parts and withdrawn by it immediately and before either bank had knowledge of the forgery. Reading the two cited cases together (they deal with a “raised” check), we place National Park Bank, the drawee bank, in the position of plaintiff; Eldred Bank in the position of Wheel Parts and Seaboard Bank in that of the First National. Eldred Bank was held liable because, although as to its customer its duty was only to collect, it did not disclose its agency, and presumably was acting as principal, that is as owner of the instrument. Seaboard was exonerated as its status as agent to collect was clear. The provisions of the Uniform Bank Collection Code (Negotiable Instruments Law, art. 19-A) codify the principles at the basis of these decisions. Assuming those cases had been rendered obsolete by the later enactment of the Negotiable Instruments Law, they were restored to full vigor by the passage of the Uniform Bank Collection Code in 1929, so far as rights and liabilities of banks inter sese are concerned (cf. 2 Baton’s Digest [1942], 1376). The principles of those cases govern here. The complaint against First National is dismissed; its claim over becomes academic; the plaintiff will have judgment against Wheel Parts for $4,715.28, with interest from November 15,1956.