SAMUEL, Judge.
This is a suit to recover the sum of $3,-911.55 paid on an uncertified check materially altered by an unlawful change of the payee’s name. Where in this opinion sections of the N.I.L. are cited without further reference to the corresponding Louisiana statute, the cited section of the N.I.L. is identical with the section of the same number of Title 7 of the Louisiana Revised Statutes.
The case was submitted on the following stipulated or admitted facts:
On August 3, 1961 the check was drawn by National Gypsum Company, of Buffalo, New York, on Manufacturers and Traders Trust Company, also of Buffalo, in the amount of $3,911.55 and payable to the order of “Geismar & Company, Inc.” Subsequently the payee’s name was altered so that the same read “Gelsmar & Company, Inc.” The original name of the payee had been typewritten and the alteration was cleverly accomplished, also by typewriter, by changing the letter “i” in Geismar to the letter “1”. On August 16, 1961 the altered check, bearing a stamped indorsement “For Deposit Gelsmar & Company, Inc.”, was deposited with the Bank of Louisiana in New Orleans in a business checking account in the name of Gelsmar & Company, which account had been opened in that bank the previous day, August 15. Also on August 16, the Bank of Louisiana deposited the check with The National Bank of Commerce in New Orleans after having indorsed thereon: “Pay to the order of Any Bank, Banker or Trust Company, All Prior Indorsements Guaranteed, Bank of Louisiana in New Orleans, August 16,1961”. The National Bank of Commerce indorsed the check “Through New Orleans Clearing House or Pay to the Order of Any Bank, Banker or Trust Co., All Prior Endorsements Guaranteed”. On August 18, 1961 the check was presented for payment by the National Bank of Commerce to the plaintiff drawee bank which paid the check on the same day and charged the amount of $3,-911.55 to the account of the drawer, National Gypsum.
The original payee, Geismar, never received any of the proceeds of the check and on November 2, 1961 it made- inquiry of National Gypsum regarding nonpayment of the outstanding invoice. On the same date National Gypsum forwarded the check to the drawee bank requesting reinstatement to its account of the amount of $3,911.55. The following day, November 3, the drawee bank sent a photocopy of the check to the National Bank of Commerce requesting reimbursement and the latter forwarded the photocopy to the Bank of Louisiana. On November 13,_ 1961, Manufacturers and Traders Trust credited the account of National Gypsum with the amount of the check and on November 28, through its attorney, demanded reimbursement from the New Orleans banks.
Thereafter the drawee bank instituted this action against both New Orleans banks. The defendants answered denying liability and, in addition, the National Bank of Commerce filed a third party petition against the Bank of Louisiana alleging it had acted only as the latter’s agent for the purpose of collecting the check and praying that, should there be judgment against the National Bank of Commerce, there be judgment in its favor and against the third party defendant in such amount as *385 to fully indemnify third party plaintiff for all liability, expenses, interest, damages and costs resulting therefrom.
There was judgment in the trial court in favor of the defendants and against the plaintiff, dismissing the latter’s suit. Plaintiff has appealed. In this court the two defendants have informed us they have agreed that, in the event judgment should be rendered against the National Bank of Commerce, it in turn should have judgment over against the Bank of Louisiana.
Although the trial court found there was no acceptance by the drawee, it held that payment of the check by the drawee in its altered form discharged the instrument and its indorsers and, in addition, that the defendants were further relieved of liability by plaintiff’s failure to give timely notice of dishonor. In connection with its first holding the court relied upon Kansas Bankers Surety Co. v. Ford County State Bank, 184 Kan. 529, 338 P.2d 309, 75 A.L.R.2d 600 (1959).
In the cited Kansas case the insurer-subrogee of a drawee bank filed an action in contract to recover payment made by its subrogor on a check otherwise genuine hut unlawfully raised by a change of amount from $90.20 to $14,000. The petition alleged the defendant bank paid the face amount of the raised check, executed its unqualified indorsement thereon and, through usual banking channels, received payment from the drawee bank. The court sustained a demurrer to the petition and held that, in the absence of allegations of bad faith or negligence on the part of the defendant, under N.I.L. Sec'. 62, providing the acceptor engages to pay the instrument “according to the tenor of his acceptance”, there could be no recovery of the amount by which the instrument was raised because payment by the drawee bank included an acceptance of the check according to its tenor at the time of such payment.
We cannot agree with the reasoning or with the result reached in the Kansas case. N.I.L. Sec. 62 is concerned only with an acceptor and his liability. It reads in part: “The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; * * Under the N.I.L. payment of a bill of exchange and acceptance thereof differ both in purpose and under the wording of the act. Payment comprehends performance by the drawee of the drawer’s order and extinguishes the instrument except as a voucher or receipt. On the other hand, acceptance contemplates the addition of the acceptor’s obligation, continuing and increasing the check’s negotiability. Section 62, in providing that the acceptor will pay the instrument according to the tenor of his acceptance, is concerned with an additional act, payment, to be performed in the future. And Sec. 132 reads in part: “The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee.” (Emphasis ours).
The effect which the N.I.L. gives to an acceptance is based on the reliance on the acceptance by subsequent holders of the instrument. Under Section 188 and Section 189 acceptance is analogous to certification of a check. While subsequent holders may rely upon an acceptance or certification, no such reliance can result from payment by the drawee. Acceptance clearly contemplates further negotiation of the instrument and is distinguishable from payment in this material, and we think controlling, fact.
In the instant case plaintiff is not an acceptor and Section 62 is inapplicable. Mere payment of a check by drawee does not constitute an acceptance nor is it the equivalent thereof. M. Feitel House Wrecking Co. v. Citizens’ Bank & Trust Co., 159 La. 752, 106 So. 292.
We are also of the opinion that payment of the check by the drawee in its altered form did not discharge the instrument or its indorsers. The contention *386 is that payment effected a discharge under the pertinent provision of N.I.L. Sec. 119, which reads “A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debt- or; * * * ”, and N.I.L. Sec. 120, which provides that a person secondarily liable on the instrument is discharged: “(1) By any act which discharges the instrument;”. The question is whether payment alone discharged the check under Sec. 119(1).
• Payment by the drawee who is not an acceptor or certifier is simply the fulfillment of the representations made by the drawer and the indorsers. The term “principal debtor” refers to the party primarily liable on the instrument. N.I.L. Sec. 192, which defines persons primarily and secondarily liable, provides: “The person ‘primarily’ liable on.an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are ‘secondarily’ liable.”- In the instant case the drawer was not absolutely required to pay the altered check; he was not a party to the alteration and had no knowledge thereof at the time payment was made. Nor was the drawee absolutely required to pay the check as presented; it could not honor the original order of the drawer because that order was altered so as to relieve the drawer of liability. Therefore payment could not have been made in due course by or on behalf of the principal debtor as required by Sec. 119(1) and the instrument was not discharged by the payment as made.
We conclude that payment of an uncertified, materially altered check, and the recovery of such payment, are not provided for in the N.I.L. and that such a case is governed by the rules of the law merchant under N.I.L. Sec. 196 (R.S. 7:195) which reads : “In any case'not provided for in this Chapter the rules of the law merchant shall govern.” We also conclude that plaintiff is entitled to recover.
The instant case is one which could be considered as governed by the laws of New York under the applicable rules of conflicts of laws. LSA-C.C. Art. 10; Sterrett v. Stoddard Lumber Co., 150 Or. 491, 46 P.2d 1023; Restatement Conflicts of Laws, Secs. 336, 358, 452, 453. The result in New York, based on provisions of that state’s N.I.L., not found in ours, and on the common law rule of quasi-contract, is the same as we reach here. New York Produce Exchange Bank v. Twelfth Ward Bank, 135 App.Div. 52, 119 N.Y.S. 988; Seaboard Surety Co. v. The First Nat. City Bank of New York, 15 Misc.2d 816, 180 N.Y.S.2d 156.
However, we prefer to base our conclusion on plaintiff’s right to recover as for money paid under a mistake of fact. See Fidelity Nat. Bank of Baton Rouge v. Vuci, 244 La. 124, 68 So.2d 781.
Prior to the adoption of the N.I.L. the courts of this country were unanimously agreed that a drawee bank which had paid to an innocent holder the amount of an un-certified, altered check, in good faith and without negligence contributing to the loss, could recover from the person to whom payment was made as for money paid by mistake. 75 A.L.R.2d 614. Louisiana followed this rule. Merchants’ Bank of New York v. Exchange Bank of New Orleans, 16 La. 457.
The defendants not having title to the check and plaintiff having paid it under the erroneous belief it was getting title from the defendants, plaintiff is entitled to restitution of the money paid under the mistake. Civil Code Articles 2301 and 2302 are controlling. See Fidelity Nat. Bank of Baton Rouge v. Vuci, supra. Those articles read:
“He who receives what is not due to him, whether he receives it through error.or knowingly, obliges himself to restore it to him from whom he has unduly received it.” LSA-C.C. Art. 2301.
“He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.” LSA-C.C. Art. 2302.
*387 Under both the N.I.L. and th'e general law otherwise applicable notice of dishonor was timely given in the instant case. Ordinarily dishonor is concerned with the refusal by the drawee to either accept or pay the instrument when presented. The purpose of prompt notice is to prevent, whenever possible, the subsequent incurring of any liability or loss by the drawer and indorsers. The ordinary dishonor situation is not present where, as here, a drawee bank pays an instrument regular on its face and subsequently discovers the instrument has been materially altered. The drawee usually, and certainly in the instant case, must learn of such alteration from the drawer before the former can dishonor. It is after the drawee has learned of the alteration that he is under a duty to give prompt notice of dishonor. Britton on Bills And Notes, 2nd Ed., pp. 396, 397, 400.
Under the general law, as is true in the case where a drawee seeks to recover money paid out on a genuine instrument under a forged indorsement, a drawee is under a duty to notify the party to whom payment was made within a reasonable time, with due diligence under the circumstances and facts involved, after the drawee learns of the material alteration and a failure to perform within such time deprives the drawee of his right to recover if the party to whom payment was made was prejudiced by such failure. See Brit-ton on Bills And Notes, 2nd Ed., p. 392; 8 C.J. Bills and Notes Sec. 917; 10 C.J.S. Bills and Notes § 392. The test is reasonable time. Under the N.I.L. the pertinent section is section 104 relative to the time of giving notice when the parties reside in different places. That section provides:
“Where the person giving and the person to receive notice reside in different places, the notice must be given within the following times:
“(1) If sent by mail, it must be deposited in the postoffice in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter.
“(2) If given otherwise than through the postoffice, then within the time that notice would have been received in due course of mail, if it had been deposited in the postoffice within the time specified in [the last subdivision].”
Section 104(1) in no case requires that notice of dishonor be posted on the day of dishonor; the sender may mail the notice on the following day.
Here the drawer received inquiry on November 2, 1961 from the original payee regarding nonpayment of the outstanding invoice and on the same day the drawer forwarded the check to the plaintiff with a request for reimbursement. Whether the check and request were received by the drawee bank on that day is not revealed by the stipulated facts. But on the following day plaintiff gave notice to the defendant National Bank of Commerce to which payment had been made. The promptest notice, clearly within the requirements of both the N.I.L. and within a reasonable time with due diligence under the general law, was given by the drawee and, insofar as notice is concerned, no prejudice or loss whatsoever was suffered by either defendant.
For the reasons assigned, the judgment appealed from is annulled and reversed and, accordingly, it is now ordered that there be judgment herein in favor of the plaintiff, Manufacturers And Traders Trust Company, and against the defendants, Bank of Louisiana in New Orleans and The National Bank of Commerce in New Orleans, in the full sum of $3,911.55, together with legal interest thereon from date of judicial demand until paid; defendants to pay all costs in both courts. It is further ordered that there be judgment in favor of third party plaintiff, The National Bank of Commerce in New Orleans, and against the third party defendant, Bank of Louisiana *388 in New Orleans, in such amount as to fully indemnify said third party plaintiff for all liability, expenses, interest, damages and costs incurred by it as a result of the judgment herein granted in favor of the original plaintiff and against the third party plaintiff.
Reversed and rendered