**Richard JAYNES and Veda J. Jaynes,**
**Appellants,**

v.

**The FIRST NATIONAL BANK OF KETCHIKAN, ALASKA, a Corporation, Appellee.**

**No. 14637.**

United States Court of Appeals
Ninth Circuit.

Aug. 23, 1956.

William L. Paul, Jr., Seattle, Wash., Floyd O. Davidson, Ketchikan, Alaska, for appellants.

Ziegler, Ziegler & Cloudy, A. H. Ziegler, Ketchikan, Alaska, for appellee.

Before STEPHENS, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

This case is a companion or sequel case to the criminal case of Jaynes v. United States, 9 Cir., 224 F.2d 367, to which reference is made for the background.

In this civil case, the First National Bank of Ketchikan sought to foreclose a "temporary mortgage" on Jaynes' house and to recover for funds on an earlier note which was also covered by the all inclusive terms of the mortgage. Further, the house which Jaynes, in his happier days as cashier of the bank, was building became subject to a number of materialmen's liens. To protect its mortgage, the bank bought the liens, taking assignments. Judgment went in favor of the bank substantially as prayed for.

The defense of the answer and the burden of the counterclaim of Jaynes and his wife was that Jaynes had begun the project when he was cashier; that his superiors had promised to finance the house and when the construction was completed to give him a mortgage for about 24 years with installment payments; that the bank agreed it would keep him employed so he could pay off the payments; and that the bank had failed to do all of this.

Among other things, the bank discharged Jaynes. He was indicted and convicted for certain details of his bank management.

We pass over the fact that one can read in 12 U.S.C.A. § 24 that officers may be discharged at will. We do not delve into the implications of that section.

We address ourselves to the fact that the answer and counterclaim plead that the bank by the agreement, which if made the bank did not keep, was obligated itself to advance to Jaynes the sum of $40,034.11.

 In our judgment, in light of the subsequent disclosure that the bank's current capital and surplus was $260,000, the defendants had stated themselves out of court. A national bank is subject to a loan limitation of ten per cent of its paid-in and unimpaired capital and unim-paired surplus. See 12 U.S.C.A. § 84. The defendants sought to legalize the transaction by suggesting to the trial judge that the parties could put the excess of the proposed or agreed loan above $26,000 under the bank's current undivided profits of $97,000. The court was told that national bank examiners force banks to put loans in excess of ten per cent there; that is, charge the excess to undivided profits.

We think in banks the term "surplus" has too long an established meaning to include undivided profits. The yardstick was fixed by the Congress on items in the financial structure that have relative permanency: paid-in capital and surplus, not undivided profits which may be carried along indefinitely or may be properly distributed tomorrow. See Chicago Title & Trust Co. v. Central Trust Co., 312 Ill. 396, 144 N.E. 165; Sarles v. Scandinavian American Bank, 33 N.D. 40, 156 N.W. 556; Willcuts v. Milton Dairy Co., 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed. 247. Cf. Leather Mfrs' Nat. Bank v. Treat, 2 Cir., 128 F. 262. We do not say that undivided profits can be considered as surplus, but if this loose construction were accepted the most that defendant could contend he was entitled to borrow would be ten per cent of $260,000 and ten per cent of $97,000.00, or a total of $35,700. The fact that it may be true that when bank examiners find bankers have violated the law the examiners then require the excess above the legal loan limit to be charged against undivided profits until such time as the excess is collected back, does not legitimize the undivided profits account of the bank as a playground for illegal doings.

The defense and counterclaim were based on the contract forbidden by the statute. Neither defense nor counterclaim had any validity.

If this were the plight of an innocent borrower who had assumed the bank knew what it was doing when it made a bargain to finance the house for $40,034.11, we could at least record our sympathy. But here we had a bank cashier who knew the amount of the bank's capital and sur-

plus. Presumably he had heard of the ten per cent limitation.

However, the whole transaction is not void. Consideration for the bank's depositors allows it to recover for the money advanced along the way. Cf. Corsicana National Bank of Corsicana v. Johnson, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141. The fact that enforcement of such an agreement as Jaynes says was made would be good retribution for the other officers and stockholders who agreed to the deal is not the test. The point upon which we rely was before the court, along with too many other points.

Our view of the law, as expressed above, disposes of all the specifications of error.

Judgment affirmed.