COMMERCIAL NATIONAL BANK OF STURGIS,
Respondent, v. RICH, et al, Appellants.

(223 N. W. 193.)

(File No. 6302. Opinion filed January 26, 1929.)

292

*Chambers Kellar,* of Lead, for Appellant Murrin.

*Schrader & Lewis,* of Rapid City, for Appellants Stephens, Gilbreath, and Fockler.

*W. G. Rice,* of Deadwood, and *Harry P. Atwater,* of Sturgis, for Respondent.

BROWN, J. Commercial National Bank of Sturgis and First State Bank of Piedmont will be referred to in this opinion as Sturgis bank and Piedmont bank respectively. Defendant Rich was not served and made no appearance in the action.

M. M. Brown was president and chief executive officer of Sturgis bank, and he and defendants in this action were officers

and directors of Piedmont bank. The statute forbids a bank to loan to one person or firm more than 20 per cent of its combined capital and surplus. In 1919 Sturgis bank had more money on hand than it could get loaned out, and Piedmont bank had customers for larger loans than it was authorized to make; so an arrangement was made by the two banks, whereby Sturgis bank agreed to take loans made through Piedmont bank for amounts in excess of its legal limit. To give Piedmont bank customers the impression that they were being accommodated by that bank, and thus aid it to retain the good will of such customers, the notes for excessive loans were to be taken in the name of Piedmont bank and transferred by it to Sturgis bank by indorsement without recourse. Such notes were usually also indorsed personally by some of the officers and directors of Piedmont bank, which bank got 1 per cent of the amount of such loans for procuring them, and no record was made of such loans on the books of Piedmont bank. On April 28, 1921, the requirement of such personal indorsement was superseded by a general guaranty in writing, executed by all the defendants except Murrin, whereby they guaranteed payment of all notes purchased by and transferred to Sturgis bank by Piedmont bank without recourse.

In December, 1921, Piedmont bank had loaned to Joseph and Matt Foley $3,500, which was the limit it could legally loan to them. The Foleys wanted $9,900 additional, and applied to Piedmont bank for a loan of $13,400, of which $3,500 was to be in the form of a renewal of the old note for that amount, and $9,900 was to be a new loan. On December 8, 1921, Piedmont bank took from the Foleys to itself as payee a note for $3,500 and one for $9,900, both due on June 8, 1922, and at once transferred the $9,900 note without recourse to Sturgis bank, which furnished the money. This note was not paid at maturity, and on August 30, 1923, at the request of Sturgis bank, defendants executed to Sturgis bank a note for $9,900, which note is the subject of this suit. When that note fell due, it was not paid, and Sturgis bank requested a renewal thereof. A new note was signed by defendants Rich, Stephens, Gilbreath, and Fockler, but Murrin refused to sign. The note in suit was retained by Sturgis bank. The Foleys gave a chattel mortgage, and also a real estate mortgage, to secure their $3,500 and $9,900 notes, which last note was retained

by Sturgis bank as collateral to the note in suit. The chattel mortgage was foreclosed in the name of the Piedmont bank, and the net proceeds, $444.81, turned over to Sturgis bank, to be credited on the Foley note for $9,900. Later the real estate mortgage was also foreclosed in the name of Piedmont bank, and the land bid in by that bank at foreclosure sale for $7,100.

The defenses set up are in substance that the agreement between the two banks was to enable the Piedmont bank to violate the law by making excessive loans; that the loan represented by the note in suit was an excessive loan, made in pursuance of this unlawful agreement, and that therefore no recovery can be had thereon; and that the note was without consideration. The case was tried to the court without a jury and from a judgment for plaintiff against the defendants Stephens, Murrin, Gilbreath, and Fockler, and an order denying a new trial, this appeal is taken.

■ In one part of the answers of all defendants it is alleged that Piedmont bank, desiring to loan only $3,500, it was agreed between the two banks that Sturgis bank should furnish the $9,900, which it did; that in all things done by Piedmont bank with reference to the $9,900 note and security therefor Piedmont bank acted only as agent of Sturgis bank, and that Piedmont bank never had or claimed any interest in that note, or acted except as agent and trustee for the Sturgis bank. The evidence fully sustains the truth of these averments. This completely does away with the lengthy and lurid charges, in other parts of the answers, of corrupt and unlawful agreements between the two banks to violate the law and public policy of the state relating to excessive loans. Piedmont bank certainly did not make an "excessive" loan when it loaned nothing at all. Neither did it incur any liability for the money of Sturgis bank, loaned through it, by taking the paper in its own name and indorsing it to Sturgis bank *without recourse*.

■ There was a sufficient consideration as to all defendants for the note sued on. The Foley note for $9,900 was guaranteed by all defendants except Murrin. It fell due June 8, 1922. Not being paid, Sturgis bank had a right to sue the guarantors. It refrained from doing this, and on August 30, 1923, took the note of the defendants for the amount, due in six months from that date. This was a definite extension of time for six months to the guarantors, and where a debt is past due, and the creditor accepts the

maker's note with an indorsement by a third party guaranteeing payment, the extension of time given by the taking of the note is a sufficient consideration as to all parties to the note. Merchants' State Bank v. Sunset Orchard Land Co., 158 Minn. 108, 196 N. W. 963. Such extension is also a sufficient consideration for the execution of the note by a new comaker. 8 C. J. 236, § 371.

██ Murrin was not discharged from liability on the note in suit by Sturgis bank taking the renewal note, which he refused to sign, if taking that note constituted an extension of time as to those signing it. An extension of time does not discharge a person primarily liable on a negotiable instrument. Code, § 1822. Taking a renewal note, signed by part only of those on the original note, does not discharge other makers of the original note who did not sign the renewal. First State Bank & Trust Co. v. Davidson (Tex. Civ. App.) 260 S. W. 922; same case on second appeal (Tex. Com. App.) 276 S. W. 222.

██ The claim of usury cannot be sustained. The law reducing the rate of interest that might be contracted for from 12 per cent to 10 per cent was not in effect at the time the Foley note was given, and the renewal note was simply an agreement to fulfill the contract evidenced by the Foley note, which contract was valid at the time it was made, and could not be made usurious by a subsequent statute reducing the legal rate of interest. 39 Cyc. 916.

██ It was error to give judgment for the full amount of the note, without credit for any part of the net proceeds from the foreclosure of the Foley real estate mortgage. The Foley mortgages, chattel and real estate, secured both notes, the one for $3,500, kept by Piedmont bank, and the one for $9,900, transferred to Sturgis bank. The net proceeds realized from both mortgages should be applied pro rata on both notes. Commercial Bank v. Jackson, 7 S. D. 135, 63 N. W. 548; 41 C. J. 686, § 706.

As the record does not show the expense of foreclosure, nor what was the net amount received on the foreclosure of the real estate mortgage after deducting legitimate expenses of foreclosure, but only the sum for which the property was sold, this court is not able to make the apportionment, and the cause must be and is remanded for further proceedings in harmony with this opinion.

SHERWOOD, P. J., and CAMPBELL and BURCH, JJ., concur.

POLLEY, J., not participating.