No. 20468.

DOVE CREEK STATE BANK *v.* LAWRENCE WAREHOUSE
COMPANY, ET AL.
(402 P.2d 369)

Decided May 17, 1965. Rehearing denied June 14, 1965.

264

MILENSKI & PARGA, for plaintiff in error.

FAIRFIELD and WOODS, CHARLES J. BEISE, WALLACE, GARRISON, NORTON & RAY, for defendant in error Lawrence Warehouse Company.

SMITH, HOLMES, WILLIAMS & TURNER, for defendant in error United States Bank of Grand Junction.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THE Dove Creek State Bank commenced this action against the following defendants: Lawrence Warehouse Company, hereinafter referred to as Lawrence; the Montelores Bean Company; Harold and Marian Tanner; the United States Bank of Grand Junction, hereinafter referred to as the United States Bank; J. W. Lancaster and Blythe Buckingham. The complaint contained nine claims for relief, two of which were dismissed on the Dove Creek State Bank's own motion.

Many of the facts underlying this controversy are undisputed. The record discloses that Harold Tanner, together with his wife Marian under the name of the Montelores Bean Company, a partnership, and through two closely held corporations, Tanner Dove Creek, Inc. and Montelores Bean Company, Inc., was engaged in the business of buying and selling dry agricultural commodities — primarily beans. Tanner had two warehouses in the Dove Creek area, one located in Dove Creek and the other in Cahone, and he also conducted operations elsewhere in the state. The nature of the business required rather extensive financing, and in this connection Tanner dealt with the Dove Creek State Bank, and particularly with one Bruce Brandt, executive vice president and cashier thereof at all times material to this case. The Dove Creek State Bank is chartered under the laws of Colorado with a total capital and surplus of $150,000.00.

Defendant Lawrence operates a national warehouse system wherein it stores commodities and certifies the reception and storage of these items by the issuance of warehouse receipts. In order to secure bank financing, Tanner leased his two warehouses at Dove Creek and Cahone to Lawrence. Defendant Lancaster was employed as warehouse manager by Lawrence and placed in control of these warehouses. Defendant Buckingham inspected the warehouses as part of his duties as an examiner for Lawrence.

In 1958, the United States Bank and the Dove Creek State Bank embarked on what later proved to be an unfortunate undertaking with respect to the Tanner enterprises. By agreement initiated by Brandt, acting in his capacity as executive vice president and cashier of Dove Creek State Bank, with one Herbert Bacon, vice president and cashier of the United States Bank, the Dove Creek State Bank endorsed Tanner notes, sent them to the United States Bank and guaranteed their payment. These notes were secured by Lawrence ware-

house receipts. The United States Bank, which was a correspondent bank of Dove Creek State Bank, credited the account of the latter with the amounts involved. Under the arrangement the Dove Creek State Bank received 1½% out of 6% interest and 1% out of 5% interest collected on the notes.

The two banks — and Tanner — pursued this course of conduct for a not inconsiderable period until two Tanner notes in the principal amounts of $60,000.00, one dated July 29, 1959, and the other dated October 30, 1959, were eventually received by the banks. It was the understanding of the United States Bank, because of its dealings and communications with Brandt, that these particular notes were to be secured by Lawrence warehouse receipts, as had been the case with other Tanner notes, and that these notes were to be handled in all respects in a manner similar to previous notes. There were, in fact, no Lawrence warehouse receipts issued to secure these notes and when they matured the United States Bank made possession of warehouse receipts a condition for their renewal. Brandt, in turn, made demand upon Tanner, and ultimately forwarded two renewal notes to the United States Bank accompanied by Lawrence warehouse receipts. Each receipt certified the existence of 900,000 pounds of "U.S. No. 1 Pinto Beans" at the Cahone warehouse.

When the first of the renewal notes became due and was not paid, demand was made for delivery of the commodities which was refused because the commodities were not in the warehouse as represented in the warehouse receipts. This signaled the beginning of the end of the Tanner financial pyramid. Lawrence denied liability. The Dove Creek State Bank denied liability on the renewal notes. The United States Bank thereafter set off the principal and its share of the interest on the two renewal notes against the account of the Dove Creek State Bank and the latter bank then commenced the instant action.

To the complaint of the Dove Creek State Bank only Lawrence and the United States Bank filed responsive pleadings. The defendant Buckingham filed a motion to dismiss the action against him for failure to state a claim, which motion was granted by the trial court. In its complaint, the Dove Creek State Bank claimed damage for other transactions in addition to those involving the two notes referred to above. The pleadings are lengthy, involved and somewhat confusing. Absent the claims for relief which were later dismissed on the motion of Dove Creek State Bank and the responsive pleadings filed thereto, the pleadings are substantially as follows:

*FIRST AND SECOND CLAIMS FOR RELIEF:* These claims were based on Tanner notes in the amount of $50,000.00 and $70,000.00 respectively and Lawrence warehouse receipts securing the same. All defendants were involved in these claims with the exception of the United States Bank. Dove Creek State Bank alleged a default on these notes and a partial failure of the security therefor. At the conclusion of Dove Creek State Bank's case, Lawrence confessed judgment in the amount of $2,500.00 on each claim and satisfaction of judgment was thereafter filed without prejudice to the Dove Creek State Bank to prosecute writ of error as to the defendants other than Lawrence.

*THIRD AND FOURTH CLAIMS FOR RELIEF:* These two claims were identical except that a separate promissory note and a separate warehouse receipt were involved in each. These claims were stated against Lawrence, Lancaster, Montelores Bean Company, Harold and Marian Tanner and the United States Bank.

The Dove Creek State Bank alleged that the United States Bank had agreed to participate in loans to Tanner; that on January 26, 1960, pursuant to such agreement, Dove Creek State Bank received from Tanner two notes, each in the amount of $60,000.00, payable to Dove Creek State Bank and endorsed by Tanner; that

these notes were endorsed by Dove Creek State Bank for delivery to United States Bank; that as security for said notes the United States Bank demanded and received from Lawrence the two warehouse receipts; that upon maturity of the notes the United States Bank improperly charged the account of Dove Creek State Bank in the amount of principal, interest and attorney's fees. Dove Creek State Bank claimed a right to recover said charge from the United States Bank, but if prevented from so doing, it claimed a right to recover from Lawrence for the failure of Lawrence to honor its warehouse receipts.

In its answer, Lawrence denied that the United States Bank demanded or received from it the two warehouse receipts and alleged that on or about January 21, 1960, pursuant to a conspiracy to defraud Lawrence, the Dove Creek State Bank received the warehouse receipts issued to the United States Bank and transmitted them to the latter bank.

The United States Bank filed an answer to the complaint and a cross-claim against Lawrence. In its answer, United States Bank denied any agreement to participate in loans to Tanner, admitted it purchased two notes from Dove Creek and alleged that pursuant to the endorsements of Dove Creek State Bank thereon it was entitled, on maturity and non-payment, to charge Dove Creek State Bank's account.

In its cross-claim against Lawrence, the United States Bank claimed demand on Lawrence for commodities listed in the two warehouse receipts and alleged a refusal by Lawrence to deliver. The bank alleged that if Dove Creek State Bank recovered from it, United States Bank would be entitled to recover from Lawrence. In answer to this cross-claim, Lawrence alleged that the United States Bank and the Dove Creek State Bank were engaged in a joint enterprise in which each bank was the agent of the other, and that the United States Bank was charged with participation in the conspiracy

of Dove Creek State Bank and Tanner to defraud Lawrence by the issuance of warehouse receipts with knowledge that they were fictitious.

With its answer to the cross-claim of the United States Bank, Lawrence filed a counterclaim and "cross-complaint" against Dove Creek State Bank, Montelores Bean Company, Harold and Marian Tanner and Lancaster. In its "cross-complaint," Lawrence alleged the conspiracy of Dove Creek State Bank, Tanner and Lancaster to issue fictitious warehouse receipts and further alleged that if the United States Bank recovered against Lawrence, Lawrence should recover from Dove Creek State Bank, Montelores, the Tanners and Lancaster.

The Dove Creek State Bank filed a reply denying the allegations of the "cross-complaint" and counterclaim of Lawrence, and the United States Bank filed an amended answer to Dove Creek State Bank's complaint alleging as an additional defense an agreement by Dove Creek State Bank to be liable for said notes in the event the maker defaulted.

*FIFTH CLAIM FOR RELIEF:* The Dove Creek State Bank alleged that on January 1, 1960, Montelores Bean Company was indebted to it on a transit item of $70,000.00; that said indebtedness was reduced to a promissory note on February 1, 1960; and that on January 27, 1960, Lawrence agreed with Tanner to pay said obligation in consideration of Lawrence having partial or full control of Tanner's operations and of delivery to Lawrence by Tanner of a note for $450,000.00, secured by trust deeds and an assignment of assets. Lawrence denied any agreement to pay the $70,000.00, but admitted that in order to protect itself it had taken a note and security from Tanner under a written agreement.

*SEVENTH CLAIM FOR RELIEF:* Dove Creek State Bank alleged that on or about January 27, 1960, Lawrence entered into an operating agreement with Montelores Bean Company and Tanner-Dove Creek, Inc., to participate in and conduct business operations of those

companies and had operated them since that date and that Lawrence had agreed with Dove Creek State Bank to insure the handling of any indebtedness to Dove Creek State Bank to its satisfaction. Dove Creek State Bank alleged that as a result, Lawrence became a partner of Montelores Bean Company and Tanner and was obligated to pay all pre-existing indebtedness to it.

Lawrence admitted the agreement to protect itself and that it was aware of certain obligations of Montelores Bean Company and Tanner. It denied any agreement with Dove Creek State Bank or the existence of a partnership.

*EIGHTH CLAIM FOR RELIEF:* Dove Creek State Bank alleged that in taking from Montelores Bean Company and Tanner certain assignments and taking possession of the property assigned, Lawrence failed to comply with the bulk sales law of Colorado, C.R.S. '53, 18-1-1 *et seq.,* and thereby became accountable to Dove Creek State Bank as a creditor of Tanner for a sum equal to the value of the goods received. Lawrence denied any sale, transfer or assignment in bulk of goods as contemplated by the bulk sales law.

The issues raised by the above pleadings were to be tried to a jury and at the pre-trial conference it was determined that the jury would return special verdicts upon disputed factual issues. At the conclusion of the trial, the trial court decided that there were no disputed questions of fact to submit to the jury. The jury was discharged and the trial court entered its "Findings of Fact, Conclusions of Law and Judgment." Judgments entered were as follows:

"1. Upon stipulation of the parties, Plaintiff shall have and recover on its First Cause of Action against Lawrence Warehouse Company, the sum of $2,500.00.

"2. Upon stipulation of the parties, Plaintiff shall have and recover on its Second Cause of Action against Lawrence Warehouse Company, the sum of $2,500.00.

"3. Plaintiff shall have and recover on its Third Cause

of Action against United States Bank of Grand Junction, the sum of $500.00.

"4. Plaintiff shall have and recover on its Fourth Cause of Action against United States Bank of Grand Junction, the sum of $500.00."

(The $500.00 referred to under each claim is in respect to attorney's fees charged by United States Bank to Dove Creek State Bank's account.)

"5. All other claims or cross claims against Lawrence Warehouse Company or United States Bank of Grand Junction are dismissed.

"6. All claims and cross claims against J. W. Lancaster are dismissed.

"7. Counterclaims against Plaintiff are dismissed.

"8. Plaintiff shall have and recover of Harold Tanner and Marian Tanner, and each of them, the sum of $158,700.00, representing $120,000.00 principal, $18,000.00 interest and $20,700.00 attorneys fees."

The trial court dispensed with the necessity of a motion for new trial and from the judgments entered the Dove Creek State Bank has prosecuted this writ of error. We conclude that error was committed, requiring a new trial. Of the numerous errors assigned by Dove Creek State Bank, we find many to be without merit and it would serve no good purpose to treat them here. With one exception, we propose to deal only with the errors assigned to that part of the judgment relating to the third and fourth claims for relief. The third and fourth claims for relief, as recited above, relate to the circumstances surrounding the two $60,000.00 renewal notes.

On this writ of error, some dispute exists between the parties as to whether there was, in fact, a guarantee by Dove Creek State Bank on the notes or, to be more precise, whether Brandt's actions in regard thereto were legally binding on Dove Creek State Bank. The parties also disagree with respect to the effect of the endorsements on the notes.

■ First, regarding the guarantee, the record conclusively shows such was made by Brandt in his official capacity acting for and on behalf of the Dove Creek State Bank, and were it not for reasons which hereinafter appear, the Dove Creek State Bank would be fully liable thereon.

■ Secondly, with respect to the endorsements, they were in the following language: "Pay to the order of any Bank, Banker or Trust Co." Dove Creek State Bank urges that this constitutes a restrictive endorsement. We do not agree. Dove Creek State Bank concedes that such would not be a restrictive endorsement under a previous decision of this Court, *Interstate Trust Co. v. United States National Bank,* 67 Colo. 6, 185 Pac. 260, but contends that 1960 Perm. Supp., C.R.S., Section 14-18-5(2) precludes the result there reached in this case. The statute referred to reads in part as follows:

"An endorsement 'pay any bank or banker,' or having equivalent words, shall be deemed a restrictive endorsement and shall indicate the creation of an agency relation in any subsequent bank to whom the paper is forwarded, unless coupled with words indicating the creation of a trustee relationship. * * *"

Under the circumstances here, it is our view that the statute does not change the rule of *Interstate Trust Co. v. United States National Bank, supra.* The Article in which the statute appears is entitled "Bank Collections" and was obviously designed only to govern collection items between banks and was not intended to change the well established rules of negotiable instruments. Dove Creek State Bank does not attempt to argue that the notes in question were collection items and they obviously were not. The statute has no application here.

We turn now to the arrangement between the banks and the propriety thereof. United States Bank premises its right to charge the account of the Dove Creek State Bank on the notes on the guarantee and endorsements. This arrangement was unique as between the

banks involved in this case. It appears from the record that in transactions between the banks concerning other borrowers, notes forwarded to United States Bank were endorsed "without recourse" and no guarantees were made by Dove Creek State Bank. Bacon testified that the Tanner notes were handled as they were because some doubt existed at the United States Bank regarding Tanner's financial stability.

The two Tanner notes amounted to a loan of $120,000.00. This amount exceeded the statutory maximum which Dove Creek State Bank was permitted to make to any one borrower. 1960 Perm. Supp., C.R.S., Section 14-16-9 (11) limits the amount which can be loaned to any one borrower to 40% of capital and surplus where the notes are secured by warehouse receipts. Can the arrangement between the banks whereby Dove Creek State Bank incurred liability on the Tanner indebtedness in excess of that which it was authorized by law to incur be given effect so as to justify United States Bank's action in charging Dove Creek State Bank's account? In our view, it cannot.

The business of banking bears such a relation to the economic security of the public as to be a proper subject of regulation by the state in the exercise of its police power. *Kirkwood v. Provident Savings Bank of Baltimore*, 205 Md. 48, 106 A.2d 103; *Floyd v. Thornton*, 220 S.C. 414, 68 S.E.2d 334. The banks of this state do not have a free rein regarding the loans which they may undertake. The General Assembly has set forth certain limitations beyond which banks cannot go and nothing is left to the banker's discretion in this regard. The interests of depositors, stockholders and, indeed, the general public command that these limitations be observed.

The policy thus declared by the General Assembly cannot be evaded by indirection. The instant case, in itself, makes that abundantly clear. The unilateral enforcement of the arrangement between the banks by the United States Bank has placed the Dove

Creek State Bank in a position which the General Assembly has said it cannot occupy. Such an arrangement was contrary to public policy and unenforceable to the extent that Dove Creek State Bank was made liable for the Tanner loan in excess of the statutory maximum. See, *Oakes National Bank v. Farmers' State Bank,* 52 N.D. 49, 201 N.W. 696; *Live Stock State Bank v. First National Bank of Fairfield,* 300 Fed. 945 (S.D. Idaho). In the cases cited, it is true that the banks involved tried to conceal the true state of affairs from the bank examiners. There was no evidence of such concealment here. But we think no realistic distinction exists between a secret arrangement whereby the policy of the law is violated and one which, while done openly, also violates the law. It follows that United States Bank had no right to charge the account of the Dove Creek State Bank for the amount of the Tanner loan in excess of the statutory maximum, if it knew or should have known that the loan exceeded the statutory lending limit of the Dove Creek State Bank.

▇ It is argued that our ruling will have a deleterious effect upon the financial structure of those predominantly rural communities serviced by relatively small banks. But, when a bank is faced with the prospect of an excessive loan it can still utilize the services of a correspondent bank, provided that it does not become liable for the excess in the event of the maker's default. See, *Commercial National Bank of Sturgis v. Rich,* 54 S.D. 291, 223 N.W. 193.

▇ Neither does what we say today afford a borrower with a defense to an action by a bank on an excessive loan. The law is clearly to the contrary. See, 10 Am. Jur.2d, *Banks,* Sec. 684; *Annotation,* 125 A.L.R. 1512.

There is one additional ground upon which the trial court held that the United States Bank properly charged the account of the Dove Creek State Bank; namely, that Brandt made misrepresentations to Bacon regarding the

security for the notes. It is not entirely clear from the record whether the trial court was referring to a misrepresentation on the original notes when no warehouse receipts existed, or whether the court had reference to a misrepresentation occurring when warehouse receipts were issued as a condition for renewal of the notes. The latter proposition involves the second error committed by the trial court and will be treated hereinafter.

As to the first proposition, if that is what the trial court meant, it is clear that United States Bank sustained no damage by virtue thereof. Any damage that United States Bank sustained was caused by the non-existence of the commodities covered by the warehouse receipts issued by Lawrence upon the renewal of the notes and not by the non-existence in the first instance of warehouse receipts on the original notes. While it is true that Brandt clearly did not hold such receipts on the original notes, his misrepresentation with respect thereto was simply not the cause of the subsequent damage.

We turn now to the final, fundamental error pervading the trial court's disposition of the third and fourth claims for relief. The question of whether Brandt had knowledge that there were no commodities in the warehouse or whether he had knowledge sufficient to charge him with the duty of further inquiry was obviously the critical fact to be resolved at the trial. The only competent evidence bearing upon this issue was the deposition of Brandt himself. Tanner was called to the stand to testify but this proved to be fruitless as he invoked his privilege against self-incrimination.

 It is true that Brandt's positive statements on direct examination that he had no knowledge or reason to believe that the beans which were the subject of the warehouse receipts were not in existence at the time the receipts were given were weakened on cross-examination when testimony given by Brandt in a criminal prosecution against Tanner was used in an attempt

to impeach him. There was also some weakening of his postive denials of knowledge when he stated on cross-examination that Tanner had told him that in all probability there were not enough beans to completely cover the warehouse receipts, but that since beans were moving out of other warehouses into the Lawrence Warehouse, he presumed Tanner had made satisfactory arrangements with Lawrence. Such testimony clearly affords no basis for holding, as a matter of law, that Brandt had knowledge of the non-existence of commodities or knowledge sufficient to charge him with the duty of further inquiry. Suffice it to say that the inferences to be drawn from Brandt's testimony on direct and cross-examination were questions of fact and within the province of the jury and not the trial court. The trial court erred in holding that there were no disputed questions of fact to submit to the jury.

The final matter of which we take note concerns the amount of the judgment rendered against the Montelores Bean Company and Harold and Marian Tanner in favor of Dove Creek State Bank. The trial court erroneously computed the balance due on the promissory notes involved and is hereby directed to correct this mathematical error on remand.

The judgment as it relates to the third and fourth claims for relief and to the balance due on the Tanner notes is reversed; the third and fourth claims for relief and the counterclaims and cross-claims filed in response thereto are reinstated and the cause remanded for trial on the merits of the said third and fourth claims for relief and the counterclaims and cross-claims therein filed.

MR. JUSTICE MCWILLIAMS not participating.