No. 22517.

LAWRENCE WAREHOUSE COMPANY *v.* DOVE CREEK STATE BANK, UNITED STATES BANK OF GRAND JUNCTION, HAROLD TANNER AND MARIAN TANNER, MONTELORES BEAN CO., AND J. W. LANCASTER.

(470 P.2d 838)

Decided June 8, 1970.    Opinion modified and as modified rehearing denied June 29, 1970.

FAIRFIELD and WOODS, CHARLES J. BEISE, WALLACE, GARRISON, NORTON & RAY, WILLIAM R. RAY, for plaintiff in error.

PARGA and DYER, ROBERT E. PARGA, for defendant in error Dove Creek State Bank.

SMITH, HOLMES, WILLIAMS & TURNER, ANTHONY W. WILLIAMS, for defendant in error United States Bank of Grand Junction.

No appearance for defendants in error Harold Tanner and Marian Tanner, Montelores Bean Co., and J. W. Lancaster.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

THIS writ of error arises out of the retrial of a controversy the first trial of which was reversed and remanded by this Court in *Dove Creek Bank v. Lawrence,* 157 Colo. 263, 402 P.2d 369.

We refer to the parties as follows: Lawrence Warehouse Company as "Lawrence"; Dove Creek State Bank as "Dove Creek"; United States Bank of Grand Junction as "United States Bank"; Harold Tanner, Marian Tanner, and Montelores Bean Co. as "Tanner"; and J. W. Lancaster as "Lancaster."

In the interests of clarity, we incorporate in part this Court's statement of facts contained in *Dove Creek Bank v. Lawrence, supra,* as follows:

"Many of the facts underlying this controversy are undisputed. The record discloses that Harold Tanner, together with his wife Marian under the name of the Montelores Bean Company, a partnership, and through two closely held corporations, Tanner Dove Creek, Inc. and Montelores Bean Company, Inc., was engaged in the business of buying and selling dry agricultural commodities — primarily beans. Tanner had two warehouses in the Dove Creek area, one located in Dove Creek and the other in Cahone, and he also conducted operations elsewhere in the state. The nature of the business required rather extensive financing, and in this connection Tanner dealt with the Dove Creek State Bank, and particularly with one Bruce Brandt, executive vice president and cashier thereof at all times material to this case. The Dove Creek State Bank is chartered under the laws of Colorado with a total capital and surplus of $150,000.00.

"Defendant Lawrence operates a national warehouse system wherein it stores commodities and certifies the reception and storage of these items by the issuance of warehouse receipts. In order to secure bank financing, Tanner leased his two warehouses at Dove Creek and Cahone to Lawrence. Defendant Lancaster was employed as warehouse manager by Lawrence and placed in control of these warehouses. Defendant Buckingham inspected the warehouses as part of his duties as an examiner for Lawrence.

"In 1958, the United States Bank and the Dove Creek State Bank embarked on what later proved to be an unfortunate undertaking with respect to the Tanner enterprises. By agreement initiated by Brandt, acting in his capacity as executive vice president and cashier of Dove Creek State Bank, with one Herbert Bacon, vice president and cashier of the United States Bank, the Dove Creek State Bank endorsed Tanner notes, sent them to the United States Bank and guaranteed their payment. These notes were secured by Lawrence warehouse receipts. The United States Bank, which was a correspondent bank of Dove Creek State Bank, credited the account of the latter with the amounts involved. Under the arrangement the Dove Creek State Bank received 1½% out of 6% interest and 1% out of 5% interest collected on the notes.

"The two banks — and Tanner — pursued this course of conduct for a not inconsiderable period until two Tanner notes in the principal amounts of $60,000.00, one dated July 29, 1959, and the other dated October 30, 1959, were eventually received by the banks. It was the understanding of the United States Bank, because of its dealings and communications with Brandt, that these particular notes were to be secured by Lawrence warehouse receipts, as had been the case with other Tanner notes, and that these notes were to be handled in all respects in a manner similar to previous notes. There were, in fact, no Lawrence warehouse receipts issued to secure these notes

and when they matured the United States Bank made possession of warehouse receipts a condition for their renewal. Brandt, in turn, made demand upon Tanner, and ultimately forwarded two renewal notes to the United States Bank accompanied by Lawrence warehouse receipts. Each receipt certified the existence of 900,000 pounds of 'U.S. No. 1 Pinto Beans' at the Cahone warehouse.

"When the first of the renewal notes became due and was not paid, demand was made for delivery of the commodities which was refused because the commodities were not in the warehouse as represented in the warehouse receipts. This signaled the beginning of the end of the Tanner financial pyramid. Lawrence denied liability. The Dove Creek State Bank denied liability on the renewal notes. The United States Bank thereafter set off the principal and its share of the interest on the two renewal notes against the account of the Dove Creek State Bank * * *."

Dove Creek's complaint against Lawrence, United States Bank, Tanner and Lancaster, asserted eight claims for relief. The judgments of the trial court on all claims were affirmed except as to the third and fourth claims which were reversed by the decision in *Dove Creek Bank v. Lawrence, supra,* and it is with the retrial of the third and fourth claims with which we are here concerned.

We set forth the analysis of the pleadings as to these claims as found in *Dove Creek Bank v. Lawrence, supra:* "THIRD AND FOURTH CLAIMS FOR RELIEF: These two claims were identical except that a separate promissory note and a separate warehouse receipt were involved in each. These claims were stated against Lawrence, Lancaster, Montelores Bean Company, Harold and Marian Tanner and the United States Bank.

"The Dove Creek State Bank alleged that the United States Bank had agreed to participate in loans to Tanner; that on January 26, 1960, pursuant to such agreement, Dove Creek State Bank received from Tanner two notes,

each in the amount of $60,000.00, payable to Dove Creek State Bank and endorsed by Tanner; that these notes were endorsed by Dove Creek State Bank for delivery to United States Bank; that as security for said notes the United States Bank demanded and received from Lawrence the two warehouse receipts; that upon maturity of the notes the United States Bank improperly charged the account of Dove Creek State Bank in the amount of principal, interest and attorney's fees. Dove Creek State Bank claimed a right to recover said charge from the United States Bank, but if prevented from so doing, it claimed a right to recover from Lawrence for the failure of Lawrence to honor its warehouse receipts.

"In its answer, Lawrence denied that the United States Bank demanded or received from it the two warehouse receipts and alleged that on or about January 21, 1960, pursuant to a conspiracy to defraud Lawrence, the Dove Creek State Bank received the warehouse receipts issued to the United States Bank and transmitted them to the latter bank.

"The United States Bank filed an answer to the complaint and a cross-claim against Lawrence. In its answer, United States Bank denied any agreement to participate in loans to Tanner, admitted it purchased two notes from Dove Creek and alleged that pursuant to the endorsements of Dove Creek State Bank thereon it was entitled, on maturity and nonpayment, to charge Dove Creek State Bank's account.

"In its cross-claim against Lawrence, the United States Bank claimed demand on Lawrence for commodities listed in the two warehouse receipts and alleged a refusal by Lawrence to deliver. The bank alleged that if Dove Creek State Bank recovered from it, United States Bank would be entitled to recover from Lawrence. In answer to this cross-claim, Lawrence alleged that the United States Bank and the Dove Creek State Bank were engaged in a joint enterprise in which each bank was the agent of the other, and that the United States

Bank was charged with participation in the conspiracy of Dove Creek State Bank and Tanner to defraud Lawrence by the issuance of warehouse receipts with knowledge that they were fictitious.

"With its answer to the cross-claim of the United States Bank, Lawrence filed a counterclaim and 'cross-complaint' against Dove Creek State Bank, Montelores Bean Company, Harold and Marian Tanner and Lancaster. In its 'cross-complaint,' Lawrence alleged the conspiracy of Dove Creek State Bank, Tanner and Lancaster to issue fictitious warehouse receipts and further alleged that if the United States Bank recovered against Lawrence, Lawrence should recover from Dove Creek State Bank, Montelores, the Tanners and Lancaster.

"The Dove Creek State Bank filed a reply denying the allegations of the 'cross-complaint' and counterclaim of Lawrence, and the United States Bank filed an amended answer to Dove Creek State Bank's complaint alleging as an additional defense an agreement by Dove Creek State Bank to be liable for said notes in the event the maker defaulted."

Although not mentioned in the foregoing statement of the pleadings, an amendment to the answer of United States Bank alleged that it was a victim of fraud practiced upon it by Dove Creek; that Dove Creek knew the warehouse receipts delivered to United States Bank were false and that there were no commodities as described in the receipts; that the receipts were represented to be valid; and that the United States Bank purchased the notes in direct reliance upon the purportedly valid warehouse receipts.

We here note that Harold Tanner, Marian Tanner, Montelores Bean Co. and J. W. Lancaster did not appear and defend against Dove Creek's claims for relief or against any cross-claims, either in the first case or in the retrial, and default was entered against them by the court.

In the first trial the court determined there were no

disputed issues of fact to submit to the jury. The jury was dismissed and the court entered its findings of fact, conclusions of law, and judgments. Dismissal of the jury by the trial court was one of the fundamental errors causing reversal and requiring retrial.

In the retrial the issues were tried to a jury. At the conclusion of the evidence, Lawrence and United States Bank each moved for a directed verdict. These motions were denied. The court then submitted four special interrogatories. The interrogatories and the jury's answers thereto are as follows:

"Question No. 1: Do you find from a preponderance of the evidence that at the time Lawrence Warehouse receipts Nos. E9901 and E9902 were delivered by Lancaster to Tanner, there *were not* in the Cahone Warehouse beans as described in the receipts which were not already represented by outstanding receipts?

"ANSWER Yes or No.

"Answer: There were Beans, But *not enough Beans.*

"If your answer to Question No. 1 is 'No' do not answer Question No. 2.

"Question No. 2: Do you find from a preponderance of the evidence that at or before the time Lawrence Warehouse receipts Nos. E9901 and E9902 were delivered by Tanner to Bruce Brandt said Bruce Brandt knew or should have known that the beans as described in the receipts were not present in the warehouse to support the receipts?

"ANSWER Yes or No.

"Answer: No.

"Question No. 3: Do you find from a preponderance of the evidence that at or before the time Lawrence Warehouse receipts Nos. E9901 and E9902 were delivered by Tanner to Bruce Brandt Tanner told Bruce Brandt that the beans as described in the receipts were not present in the warehouse to support the receipts?

"ANSWER Yes or No.

"Answer: No.

"Question No. 4: Do you find from a preponderance of the evidence that at the time U. S. Bank released the notes it then held and accepted the notes dated January 26, 1960, it did so in reliance in part upon the Lawrence Warehouse receipts Nos. E9901 and E9902 which were delivered to it with said notes?

"ANSWER Yes or No.

"Answer: Yes."

The court then entered findings of fact and conclusions of law, upon which judgments were thereafter entered as follows:

1. Judgment in favor of Dove Creek on its third and fourth claims and against United States Bank for $60,000 plus $22,526.84 interest and $500 attorney's fees, or a total of $83,026.84.

2. Judgment in favor of United States Bank on its cross-claim against Lawrence for the same amount.

3. Judgment in favor of Lawrence on its cross-claim against the Tanners, Montelores and Lancaster, jointly and severally, for the same amount.

4. Judgment in favor of Dove Creek and against Lawrence for the same amount.

5. Additional judgment in favor of Lawrence on its cross-claim against the Tanners, Montelores and Lancaster, jointly and severally, for the same amount.

Lawrence and the United States Bank each filed motions for judgment notwithstanding the verdicts and motions for a new trial. All motions were denied.

Lawrence seeks reversal of the judgment for $83,026.84 against it in favor of Dove Creek. Lawrence does not contest the judgment against it in favor of United States Bank, admitting liability on its warehouse receipt to the United States Bank. The United States Bank seeks reversal of the judgment for $83,026.84 against it in favor of Dove Creek.

I.

█ █ Lawrence's main contention for reversal is that the trial court erred in failing to grant its motion for

directed verdict and for judgment notwithstanding the verdict. Lawrence contends the jury's answers to special interrogatories Nos. 2 and 3 are not supported by the evidence and that a judgment of dismissal of Dove Creek's claims against Lawrence should have been granted. We agree. A review of the entire record fails to reveal any substantial, competent, credible evidence upon which a jury could return the answers it did to interrogatories Nos. 2 and 3. The answers are contrary to the evidence and we regard them as arbitrary and capricious. In such circumstances a judgment cannot stand. *Accessory Supply v. Kayser*, 160 Colo. 315, 417 P.2d 481; *Burns-Moore Co. v. Watson*, 45 Colo. 91, 101 P. 335.

Lawrence's defense was based upon its charge of fraudulent conduct imputed to Dove Creek through its agent and officer, Brandt, who was the vice president, cashier and chief operating officer of Dove Creek State Bank. The essence of Lawrence's charge of fraud was that Brandt, the bank officer in charge of the Tanner loan accounts, conspired with Tanner for the fabrication of false warehouse receipts in order to obtain the renewal of the two overdue $60,000 notes which Dove Creek had sold to the United States Bank.

The undisputed evidence showed that by reason of speculative losses in the pinto bean market Tanner enterprises had become heavily indebted to Dove Creek and were in desperate financial condition. As of June 1959 Tanner owed Dove Creek approximately $500,000 of which $200,000 was unsecured. The combined capital and surplus of Dove Creek State Bank was only $150,000. This excessive overloan situation was the product of Tanner's negotiations with Brandt who handled all of Dove Creek's loans to Tanner. It was not shown that United States Bank was aware of this condition, and in July of 1959 Tanner's account with United States Bank showed a zero balance.

On July 29, 1959, the first two $60,000 notes were sold to United States Bank by Dove Creek. Although Brandt

represented that these notes were secured by warehouse receipts, which Dove Creek purportedly held, there were in fact no such receipts, all of which was admitted by Brandt in his deposition. When these notes matured in October of 1959, the loans were renewed by new notes which Brandt likewise represented to be secured by warehouse receipts in Dove Creek's possession. No such receipts existed. And, at last, when the October notes matured, United States Bank made as a firm condition of renewal the delivery to it of warehouse receipts. Faced with this situation, Brandt made his demand for the receipts upon Tanner.

As stated in *Dove Creek Bank v. Lawrence, supra,* the critical issue to be resolved at the trial was whether Brandt had knowledge there were no commodities in the warehouse to support the receipts, or whether he had knowledge of facts sufficient to charge him with the duty of further inquiry into the situation. At the first trial the only direct evidence of knowledge or duty to inquire was that contained in the deposition of Brandt in which, although he flatly denied that he had knowledge or reason to believe the beans which were the subject of the warehouse receipts were not in existence, he admitted testifying in a federal criminal trial where Tanner was the defendant that he had been advised by Tanner there were not enough beans in the warehouse at the time to support the warehouse receipts. Brandt who was in New Mexico at the time of the retrial did not return to Colorado to testify in the retrial. The same deposition was again read into evidence. However, whereas in the first trial the only evidence of his knowledge of these matters was the admissions contained in his deposition, in the retrial Tanner (who at the first trial refused to testify under his Fifth Amendment rights) did testify unequivocally that when first requested by Brandt to furnish warehouse receipts he told Brandt there were no commodities to cover the receipts; that Brandt told him to furnish the receipts anyway; that he obtained the re-

ceipts by persuading Lancaster, the warehouse manager, to issue the false receipts, by assuring Lancaster that he would shortly borrow funds from sources in Texas to pay off the obligations in question; that he delivered the receipts to Brandt and again told Brandt there were no commodities to cover them, and instructed Brandt to hold the receipts while he went to Texas to borrow the money to pay off the delinquent notes. Tanner in fact did go to Texas for this purpose but was unsuccessful in this mission.

In addition to Tanner's testimony, there was the evidence of witness Blythe Buckingham who testified that Brandt, at a time subsequent to the collapse of the Tanner enterprises, in a discussion concerning Brandt's financial difficulties, admitted that Tanner's testimony in federal court was correct — that he, Brandt, had been told there were no beans for the receipts and that it was necessary for him to claim lack of knowledge because of his problems at the bank and at home.

Also, there was further evidence of Brandt's knowledge from witness Herbert Bacon, vice president of the United States Bank, who testified Brandt admitted to him shortly before the first renewal note became due and payable that he was dubious that there were beans in existence to support the warehouse receipts.

Additionally, admitted into evidence concerning the question of Brandt's knowledge was a copy of Dove Creek's complaint in the United States District Court against Indemnity Insurance Company of North America in a suit by which Dove Creek sought to recover damages on its officers' fidelity bond. In this complaint Dove Creek specifically sought recovery on the grounds of fraud perpetrated by Brandt in connection with the transactions in question, in addition to other fraudulent involvements.

The foregoing direct evidence bearing upon Brandt's knowledge or duty to inquire concerning the validity of the warehouse receipts, when weighed in the light of the circumstances existing in July of 1959 when the

original $60,000 notes were negotiated, and the admitted fraudulent renegotiation of said notes in the fall of 1959, can only lead to one conclusion: that reasonable men could draw but one inference from the evidence, that is, that Brandt, and Dove Creek constructively, had knowledge of the fraud, or sufficient reason to cast upon them a duty of further inquiry to investigate whether in fact the warehouse receipts were actually supported by the commodities as represented therein.

██ The jury's verdict rendered in favor of Dove Creek against Lawrence should have been set aside by the trial court upon Lawrence's motion. We conclude that Dove Creek is chargeable with the fraudulent conduct of Brandt, its chief executive officer and agent, just as Lawrence is chargeable for the issuance of the false warehouse receipts by Lancaster, its manager and agent. Neither Dove Creek nor Lawrence, being *in pari delicto* by reason of their participation in the fraudulent scheme to fabricate the false collateral, should be allowed to prevail against the other in their efforts to recoup their consequent losses. The judgment in favor of Dove Creek and against Lawrence must be reversed. Inasmuch as the trial court concluded as a matter of law that Lawrence should recover on its cross-claims from Tanner and Lancaster the amounts adjudged against it in favor of Dove Creek and the United States Bank, we, having reversed the judgment in favor of Dove Creek against Lawrence, must also reverse the judgment hereinbefore referred to as "additional judgment" which was entered by reason of the judgment in favor of Dove Creek against Lawrence, which we have now reversed.

II.

██ United States Bank alleges error in the trial court's entry of judgment against it for $83,026.84 in favor of Dove Creek, asserting that Dove Creek's fraud should bar it from recovery. It will be recalled that when Tanner defaulted in payment of the renewal notes, and it was then discovered that recovery could not be made by fore-

closure of the warehouse receipts, the United States Bank debited Dove Creek's account with the amount due and owing, including attorney's fees. In *Dove Creek Bank v. Lawrence, supra,* this Court denied the right of United States Bank to make such setoff inasmuch as the Tanner loan exceeded the statutory maximum. It was there held that an arrangement by which Dove Creek agreed to guarantee an excessive loan was contrary to public policy and, accordingly, a setoff based upon such a guarantee was not permissible. Mr. Justice Pringle speaking for the Court said:

"* * * It follows that United States Bank had no right to charge the account of the Dove Creek State Bank for the amount of the Tanner loan in excess of the statutory maximum, if it knew or should have known that the loan exceeded the statutory lending limit of the Dove Creek State Bank."

Herbert Bacon, vice president of United States Bank, admitted he knew of the capital-surplus structure of Dove Creek State Bank. Having such knowledge, if he was not actually aware of the excess loan of $60,000, he should have been, as he was an officer of a state banking institution and is presumed to have known the law relating to lending limits. Such being so, public policy forbids enforcement of the guarantee of the excess loan, notwithstanding the existence of the fraud of Dove Creek which we deem to be collateral and nonactionable as to Dove Creek under these circumstances.

We observe here that United States Bank, having already recovered one-half of the amount due it by means of the setoff against the account of Dove Creek, recovered the balance owing it on Tanner's obligations by way of judgment against Lawrence for $83,026.84.

The judgment in favor of Dove Creek State Bank and against United States Bank is affirmed.

The judgment in favor of Dove Creek State Bank and against Lawrence Warehouse Company is reversed and this claim is ordered dismissed.

The judgment referred to herein as "additional judgment" in favor of Lawrence Warehouse Company on its cross-claim against Harold Tanner, Marian Tanner, Montelores Bean Company and J. W. Lancaster is reversed and the cross-claim on which said judgment was based is ordered dismissed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE dissenting.

MR. JUSTICE GROVES not participating.

MR. JUSTICE PRINGLE dissenting:

I respectfully dissent.

In my view, *Dove Creek Bank v. Lawrence*, 157 Colo. 263, 402 P.2d 369, is determinative of this case. There we remanded the case for a new trial stating that the issue of whether Bruce Brandt, who was an officer of Dove Creek Bank, had knowledge that there were no commodities in the warehouse to support the receipts or whether he had knowledge of the facts sufficient to charge him with the duty of further inquiry into the situation was a question for the jury. That became the law of this case. The disputed issues of fact were submitted to the jury for determination by way of the four special interrogatories. These special interrogatories were answered by the jury in the negative.

In my view, this court cannot substitute its judgment for that of the jury and this court is bound by the jury's determination of the disputed issues of fact, and I would affirm.

MR. JUSTICE DAY authorizes me to say that he joins in this dissent.