336

PACIFIC NATIONAL BANK OF WASHINGTON, *Respondent*, v.
J. E. HALL et al., *Appellants*.

*Patrick H. Murphy* and *John G. Layman*, for appellants.

*Paul F. Schiffner* and *John D. MacGillivray* (of *MacGillivray, Jones, Clarke, Schiffner & Johnson*), for respondent.

GREEN, C.J.—Plaintiff, Pacific National Bank of Washington (hereinafter "PN"), brought this action to recover $100,000 plus interest from defendants, J. E. and Florence Hall (hereinafter "Hall"), and Farmers & Merchants Bank (hereinafter "F & M"). The action against Hall is based upon his personal guarantee of a note from Hall, Inc.; whereas, the action against F & M is based on breach of contract. Hall and F & M denied liability and F & M filed a

cross claim against PN and for judgment over against Hall. After trial, judgment was entered in favor of PN against Hall and F & M. F & M was granted a judgment over against Hall, and its cross claim against PN was dismissed. F & M and Hall appeal.

F & M is a State-chartered bank in Spokane County. During the period involved, its maximum loan limit to a single borrower increased from $50,000 to $75,000. At the time the transaction herein occurred, J. E. Hall was chairman of the board of F & M and a substantial stockholder. He attended the monthly board and weekly executive committee meetings. At the same time, Hall was president and principal stockholder of Hall, Inc., an Idaho corporation, engaged in logging operations in Washington, Idaho and Montana.

Although Hall, Inc., had assets of several million dollars, in the spring of 1970 it was having cash flow problems and sought a loan of $250,000. Because this loan exceeded F & M's maximum loan limit, F & M assisted Hall in negotiating a loan from PN. On April 1, 1970, Hall, Inc., executed a 30-day note for $250,000 payable to F & M. Simultaneously, Hall personally guaranteed any amount due or thereafter to become due from Hall, Inc., to F & M, *its successors and assigns* up to $250,000. As a part of this loan transaction, F & M and PN executed a participation agreement between themselves. Under this agreement, PN agreed to purchase from F & M and participate in a $250,000 revolving line of credit to Hall, Inc.; F & M was to retain physical possession of the note and guarantee and service the loan on behalf of PN. Pursuant to these agreements, PN provided Hall, Inc., with a loan of $250,000. F & M also issued a participation certificate reflecting PN's full participation in the loan.

On June 11, 1970, only $10,000 having been paid, a renewal note for $240,000 was executed by Hall, Inc. At the same time, another participation agreement was signed between F & M and PN converting the renewal to a term loan rather than a revolving line of credit. F & M issued a new

participation certificate to PN. When this note was not paid, a renewal note for $240,000 was executed by Hall, Inc., on August 17, 1970. On November 24, 1970, there was a balance of $100,000 due and owing on this note.

Hall, Inc., requested an extension that was reluctantly granted on the condition F & M obtain another personal guarantee from Hall. On January 20, 1971, Hall, Inc., executed a renewal note for $100,000 payable on demand or on March 20, 1971. Hall endorsed his personal guarantee on the back of the note and signed a personal guarantee in favor of F & M, *its successors or assigns*. At the same time, F & M issued another participation certificate to PN.

This note for $100,000 was not paid when it became due. On May 11, 1971, Hall, Inc., filed for reorganization under the bankruptcy act and on December 30, 1971, was adjudged a bankrupt. On May 18, 1971, Hall transferred all his assets listed in his personal financial statement to the Coeur d'Alene Yacht Club, in Coeur d'Alene, Idaho, against which the Internal Revenue Service had a lien.

Prior to April 1, 1970, Hall was personally indebted to F & M for $50,000, F & M's maximum loan limit. By February 9, 1971, the maximum loan limit had increased to $75,000. At that time Hall's personal loan was consolidated with a $25,000 loan to Hall, Inc. A corporate note was given to F & M for $75,000. This note was secured by the assignment of corporate assets valued at $71,000. PN was not notified of this transaction.

The trial court held that F & M's failure to notify PN of the February 9, 1971, transaction constituted a breach of the participation agreement and entered judgment in favor of PN against F & M.

■ First, F & M contends that to allow PN to recover $100,000 under the participation agreement would be against public policy because it creates a loss to F & M in excess of its maximum loan limit to a single borrower

under RCW 30.04.110.[1] It is argued that the enforcement of the participation agreement beyond F & M's maximum loan limit is tantamount to enforcement of a guarantee in excess of such limit which would be in violation of the statute. We disagree.

It is clear that PN provided the entire $250,000 to Hall, Inc., of which $100,000 is unpaid. Under the participation agreement, F & M did not guarantee the repayment of that loan. Rather, it agreed to service the loan on behalf of PN and to:

Immediately notify buyer [PN] of any adverse change in borrower's [Hall, Inc.] financial condition or the status of the collateral or any other significant aspect of the loan(s).

and to:

Proceed diligently to collect all payments due under the said loan(s) as and when the same shall become due and payable.

Recovery was allowed because F & M breached these provisions of its agreement with PN, and not because Hall, Inc., did not repay the loan. Had F & M not breached the participation agreement, F & M would not be liable to PN even

---

[1] RCW 30.04.110 provides:

"The total liability to any bank or trust company of any person for money borrowed, including in the liabilities of a firm or association the liabilities of the several members thereof, shall not at any time exceed fifteen percent of the capital and surplus of such bank or trust company; but the discount of bills of exchange drawn in good faith against actually existing values and the discount of commercial or business paper of solvent parties, actually owned by the person negotiating the same, shall not be considered as money borrowed by him: *Provided,* That loans secured by collateral security having an ascertained market value of at least fifteen percent more than the amount of the loans secured, shall not be limited by this section.

"Loans or obligations shall not be subject under this section to any limitation based upon such capital and surplus to the extent that they are secured or covered by guaranties, or by commitments or agreements to take over or to purchase the same, made by any federal reserve bank or by the United States or any department, bureau, board, commission or establishment of the United States, including any corporation wholly owned directly or indirectly by the United States."

though Hall, Inc., defaulted on its loan. If the participation agreement were tantamount to a guarantee, the contrary would occur.

The authorities relied upon by F & M in support of its contention that the participation agreement is against public policy are cases in which a small bank guaranteed or obligated itself to the larger bank to pay the indebtedness if the debtor failed to do so and the indebtedness exceeded the bank's statutory loan limit. Therefore, they are distinguishable.[2] Thus, we hold that a recovery in excess of the maximum loan limit under the participation agreement involved in this case is not violative of public policy nor the provisions of RCW 30.04.110. If participation agreements of the type involved in this case are to be declared against public policy, that declaration must come from the legislature, and not from the courts.

Second, F & M contends there was no participation agreement in effect under which PN could recover. The record shows that participation agreements were executed on April 1, 1970, with the original $250,000 loan, and again on June 11, 1970, with the first renewal note. None were executed with the August 17, 1970, and January 20, 1971, renewal notes; however, participation certificates were issued evidencing PN's full interest in the loan.

■ F & M takes the position that the earlier participa-

---

[2] *Wald v. Wheelon*, 147 N.W. 402 (N.D. 1914) (bank not accountable for breach of an illegal contract to loan to its customer an amount in excess of its legal limit); *Dove Creek State Bank v. Lawrence Warehouse Co.*, 157 Colo. 263, 402 P.2d 369 (1965) (plaintiff bank endorsed and guaranteed full payment to correspondent bank); *First Nat'l Bank v. Monroe*, 69 S.E. 1123 (Ga. 1911) (guarantee); *Oakes Nat'l Bank v. Farmer's State Bank*, 201 N.W. 696 (N.D. 1924) (agreement between banks entered into for the purpose of violating the loan limit and concealing such violation); *Live Stock State Bank v. First Nat'l Bank*, 300 F. 945 (S.D. Idaho 1924) (guarantee); *Jaynes v. First Nat'l Bank*, 236 F.2d 258 (9th Cir. 1956) (an illegal agreement to advance money in excess of the bank's statutory limit); *Schramm v. Bank of California, Nat'l Ass'n*, 143 Ore. 546, 20 P.2d 1093 (1933) (bank pledged assets in excess of its legal limit).

tion agreements do not apply to the January 20, 1971, loan. The trial court found:

> Although no new Participating Agreement was entered into as of January 20, 1971, the previous Participation Agreement of June 11, 1970, was still in force and effect and applied to and bound F & M and PN throughout the course of the loan and to the $100,000.00 balance of the loan represented by the renewal note of January 20, 1971.

Underlying this finding are these comments from the trial court's memorandum opinion:

> The court holds that this participation agreement [June 11, 1970] binds the parties throughout the course of this loan. It was more of a bookkeeping convenience to cancel the existing notes and execute new notes for the balance remaining, i.e. $100,000.00 rather than to continue showing on the books the same note with the $100,000.00 balance. It also, no doubt, looks better as far as bank examiners are concerned, showing a new note rather than a delinquent one, but in substance the consideration, the loan, that is the transfer of the money, is the matter with which this court is concerned not the papers reflecting it. It is the loan upon which this suit is based, not the note paper. Without the loan, the note paper is a worthless shell. This court will not permit substance to dissolve in form.

We agree. The $100,000 sought to be recovered in this action is the balance of the original $250,000 loan provided by PN. F & M participated in each renewal transaction; continued servicing the loan after each renewal; and never questioned the effectiveness of the participation agreement until this action. The course of conduct between the parties militates against F & M's contention and we find substantial evidence to support the trial court's finding.

Third, F & M urges that if there was a valid participation agreement in effect, F & M did not breach it, and F & M's actions were not the proximate cause of loss to PN. Accordingly, F & M assigns error to the following findings:

## XVI.

This additional loan of $25,000.00 to Hall, Inc. by F & M on February 9, 1971, the taking by F & M of collateral to secure what had previously been an unsecured loan, and the resulting impairment of the financial condition of Hall, Inc. were not communicated by F & M to PN.

## XVII.

On February 9, 1971, F & M had full knowledge of the financial condition of Hall and Hall, Inc. and knew that Hall, Inc. was then in financial difficulty. F & M then knew that in taking to itself the Cook contract as collateral, it was thereby improving its own financial position as to its $75,000.00 loan to Hall, Inc. and was necessarily causing an impairment of PN's financial position as to its $100,000.00 loan to Hall, Inc. F & M then knew that in taking such collateral it was causing an adverse change in the financial condition of Hall, Inc., was creating a change in the collateral security of Hall, Inc., and that such was a significant aspect affecting PN's loan to Hall, Inc., concerning all of which F & M was required to immediately notify PN pursuant to the provisions of paragraph 4 of the Participating Agreements of April 1, 1970, and June 11, 1970.

## XVIII.

PN was entitled to rely on the provisions of its participation agreements requiring F & M to immediately notify PN of any adverse changes in the financial condition or collateral of Hall, Inc. and as to any other significant aspects of its loan to Hall, Inc.

## XIX.

On February 9, 1971, there were then in the possession of F & M sufficient assets of Hall and Hall, Inc. to satisfy its indebtedness of $100,000.00 to PN and there were in existence additional unencumbered assets and property of Hall and Hall, Inc. sufficient to fully collateralize its indebtedness to PN. As of February 9, 1971, if F & M had notified PN of the adverse change in the financial condition and collateral of Hall, Inc. and as to the significant aspect created by F & M's increase of the loan and its taking of collateral from Hall, Inc., PN could then have taken action to protect itself and to insure collection of the $100,000.00 indebtedness owing to PN by Hall, Inc.

F & M argues that it properly took a note and security for the $75,000 loan to Hall, Inc. The participation agreement

did not prohibit the transaction and it did not result in any overall detriment to the financial condition of Hall, Inc., because the previous $50,000 personal loan was used by Hall, Inc., and the additional loan of $25,000 increased Hall, Inc.'s working capital that was in short supply. Further, F & M points out that it is pure speculation to assume that PN would have put itself into any better collateral position or collected any more of its loan had it been informed of F & M's February 9 transaction. Finally, it is urged that PN was in as good a position to know of Hall, Inc.'s financial problems as F & M. Despite the zeal with which these arguments are presented, we cannot agree.

While not presuming the specific action PN would have taken, Mr. Chapman, an officer of PN, testified that had PN known that F & M thought it necessary to take security on February 9, 1971, "something would have taken place and we would have cleared the air on it." PN did not learn of this transaction until February 28, 1972. At the time the $100,000 note became due on March 20, 1971, and for a short time thereafter, Hall, Inc., had on deposit sufficient funds to cover the note. PN could have taken the security that F & M took for itself. Additionally, other collateral may have been available to secure Hall, Inc.'s obligation to PN. In essence, the trial court found and the evidence supports the conclusion that F & M, by failure to inform PN that it thought it necessary to collateralize itself, deprived PN of the opportunity to protect itself against the eventual default of Hall, Inc. We find in the record sufficient evidence to support the challenged findings.

Fourth, F & M contends that if the participation agreement was in effect, it should be construed to prorate all payments and all security received from Hall, Inc., between F & M and PN for their respective $75,000 and $250,000 loans and to prorate any losses occurring. This position would have merit if F & M had participated in the $250,000 loan. However, PN loaned the entire amount and F & M had no participation in it. As the trial court noted, "The

court wishes to repeat that because the original loan was not a proportionate loan, there is no proportioning into it." F & M's contention must fail.

Finally, Hall contends the trial court erred in granting F & M a judgment over against him for the amount of the judgment in favor of PN. Hall's position is that they are not parties to the participation agreement and, consequently, any judgment entered against F & M for breach of that agreement cannot form the basis for indemnity or recovery under the guarantee given by Hall on the $100,000 note. We disagree.

■ Form cannot prevail over substance. The origin of F & M's liability was Hall, Inc.'s default and Hall's failure to pay the $100,000 note under its guarantee. F & M's liability under the participation agreement arose because it failed to warn PN that Hall, Inc., might default. Under his guarantee, Hall agreed to pay if Hall, Inc., defaulted. Thus, it was because of Hall's default that F & M's liability came into existence. In this situation, the judgment over is proper. Otherwise, Hall would escape his responsibility to respond under his personal guarantee if F & M paid PN the full amount of the judgment obtained against it. This would be an inequitable result and one this court should not sanction. *See Coy v. Raabe,* 69 Wn.2d 346, 350, 418 P.2d 728 (1966); *Credit Bureau Corp. v. Beckstead,* 63 Wn.2d 183, 385 P.2d 864 (1963); *J.D. O'Malley & Co. v. Lewis,* 176 Wash. 194, 201, 28 P.2d 283 (1934).

Judgment affirmed.

MUNSON and McINTURFF, JJ., concur.

Petition for rehearing denied February 13, 1975.

Review denied by Supreme Court April 28, 1975.